# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00848-COA

**TAVARIS COLLINS A/K/A TAVARAS COLLINS**
**A/K/A TAVARES COLLINS A/K/A TAVARIS**
**FRANSHAY COLLINS A/K/A TAVARIS F.**
**COLLINS A/K/A FROG**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/06/2015 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MURDER, AND SENTENCED TO LIFE IMPRISONMENT, AND COUNTS II AND III, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCED TO TEN YEARS FOR EACH COUNT, WITH ALL SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. After a jury trial, Tavaris Collins was convicted for the first-degree murder of Devin Mitchell, as well as two counts of possession of a weapon by a convicted felon. The trial court sentenced him, as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), to life without the possibility of parole for the murder charge, and ten years for each of the two counts of felon in possession of a weapon, all in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Collins raises two issues: whether the evidence was sufficient to convict him, and whether he received ineffective assistance of counsel. Finding no error, we affirm Collins's convictions and sentences.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. This case stems from the early-morning shooting of sixteen-year-old Devin Mitchell in the courtyard of his cousins' apartment in West Point, Mississippi, on January 1, 2012. On New Year's Eve, Devin, who lived in Starkville, Mississippi, was visiting his cousins in West Point, and had gone to church with his family. They returned to his adult cousin Queenie Walker's apartment, which was on the ground level of a four-unit building. Two apartments were on the ground floor, separated by a breezeway, and two apartments were on the second floor. Devin, his sister, and his cousins visited, watching a movie on television and eating a late dinner after church. At midnight, the cousins went outside and wished neighbors a happy new year. After thirty minutes, they went to another cousin's apartment to play a video game. At approximately 1:30 a.m., Devin walked his cousin and sister back to Queenie's apartment. Devin then went back outside to talk on his phone and socialize with his sixteen-year-old friend Porsha Ewing. He spoke to her through her bedroom

2

window until Queenie called him to come inside. As Devin was walking across the courtyard to Queenie's apartment, Devin was shot in the head and killed by thirty-one-year-old Collins, who lived in his girlfriend's apartment on the second floor.

¶3.     Queenie did not witness the shooting, but she, her sixteen-year-old daughter Alexis, and Porsha all heard four or five gunshots fired in quick succession near the breezeway of Queenie's apartment building. Initially, Queenie thought the sounds were fireworks. When she went back outside to look for Devin, Queenie found him lying face down and unresponsive on the sidewalk. Queenie told Alexis to call for help. Collins was standing nearby with a dark-colored handgun in his hand, acting like he was looking for someone. Collins gestured toward the bushes behind the apartments, like someone was out there, but Queenie testified there was not anyone there.

¶4.     Collins returned up the stairs and sat on the threshold of the doorway to his apartment. Queenie, screaming for help, went to her apartment to call 911. As law enforcement arrived, Collins reemerged from his apartment and told Queenie "I will do you one better," laying a different gun than the one he was previously carrying on the concrete next to Devin's body. It was later identified as a TEC-9-.22 caliber semiautomatic pistol.

¶5.     Officer Jeremy Bell of the West Point Police Department responded to the scene first at approximately 3 a.m. Queenie and Collins both waved him down. Queenie was "very excited" and yelled to Officer Bell: "He's sixteen. He's been shot." Collins told Officer Bell he had fired some shots toward the wooded area near the apartments using the .22-caliber pistol on the pavement; however, Collins could not describe the number of alleged

3

shooters or what they were wearing. Collins told Officer Bell the shooters were running from the building into the woods. Initially, Collins stated he fired his gun while "at the back of the stairs in the breezeway," but a few minutes later, he stated that he was standing in the complex's courtyard when he fired the shots. He changed his story a third time to explain that during an exchange of gunfire, he walked past Devin and shot toward the courtyard at individuals who were running away. Officer Bell rolled Devin's body over, and saw that Devin had been shot in the head and was unarmed. Collins did not know Devin, and stated he fired the shots because he heard someone else shooting. However, Collins never told Officer Bell that anyone had shot at him.

¶6.     A large crowd began to gather; so Collins was transported from the scene for safety. On the way to the police station, Collins asked Officer Bell, "do you think my gun did it?" At the station, he gave a fourth version of the shooting, stating he was at the back of the stairs and shot toward the parking lot. He also added that one of the shooters was wearing blue jeans and a black hoodie, the same clothing that Devin was wearing.

¶7.     At the scene, Queenie told lead investigator Albert Lee that the TEC-9 firearm found beside Devin's body did not appear to be the firearm Collins used in the shooting. Obtaining a warrant, investigators searched Collins's apartment and found a .38-caliber revolver and shell casing hidden in the attic, near the crawl-space entrance. The revolver contained four empty shell casings. No further evidence was recovered from the scene. A projectile was recovered from Devin's skull, but was too damaged to compare to samples from the two guns recovered.

4

¶8.     Initially, Collins invoked his right to remain silent, but the next day, at his mother's urging, Collins gave a statement to Officer Gary Turner, which was recorded and played for the jury at trial.  In the statement, Collins mentioned several times that he was "very paranoid," and had been for the past three months, which his mother and sister could confirm.  He claimed unidentified individuals and vehicles had been following him for several weeks, but he did not know why.  Later, Collins admitted that he had consumed beer and marijuana the night of the murder.  During the interview Collins sounded disturbed, mumbling and repeating himself: "You know what I'm saying?  I'm gonna get them before they get me to be real honest with you.  You know what I'm saying, you know what I'm saying?"  Collins admitted to firing shots at the apartment after he heard a pop and saw a "little dude," who was watching him, put a hood on his head.  Collins shot multiple times – in the direction of the "dude" and out in the woods.  Collins also admitted that he had two different guns, a .38-caliber revolver and a .22 semiautomatic pistol, and that he initially shot the .38, and then the .22, which jammed on him.  Collins admitted to Officer Turner that he did not mean to shoot Devin – Collins was just trying to "spook" whoever was trying to hurt him.  At the end of the interview, Collins expressed regret over the shooting of the "little boy," stating the victim "was at the wrong place [at the] wrong time."  Investigator Lee believed Collins to be paranoid.

¶9.     A three-count indictment was returned against Collins for deliberate-design[1] (first-

---

[1] The Mississippi Legislature designated deliberate-design murder as first-degree murder, and depraved-heart murder as second-degree murder, effective July 1, 2013.  *See* Miss. Code Ann. § 97-3-19(1)(a)-(b) (Rev. 2014).

degree) murder, and two counts of possession of a weapon by a felon. The trial court granted a change of venue from Clay County to Union County, as the victim was a well-known and well-liked football player at Starkville High School. The trial court also ordered a psychological evaluation of Collins.

¶10. The psychological evaluation, performed by Dr. Criss Lott, was filed with the trial court, and a competency hearing was held. The report showed that while Collins had some mental illnesses, none would prevent him from being able to assist his attorney, or understand the nature and consequences of his actions. At trial, Dr. Lott testified for the defense. He noted that, at the time of the shooting, Collins was quite paranoid and possibly delusional, but he was not legally insane. That is, he knew the nature and quality of his actions, and the wrongfulness of shooting someone for no reason, although his judgment may have been impaired.

¶11. For Count I, the jury was instructed on first-degree murder, second-degree murder, culpable-negligence manslaughter, self-defense, and "imperfect" self-defense. Collins was found guilty of first-degree murder and both counts of felon in possession of a firearm.

**ANALYSIS**

### I.    Sufficiency of the Evidence

¶12. Collins's motion for a directed verdict challenging the sufficiency of the evidence was denied by the trial court. Collins now argues that the State failed to prove the element of deliberate design; therefore, his first-degree-murder conviction should be reversed, and the

6

direct-remand rule[2] applied so that he can be sentenced for second-degree murder.

¶13.    In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nolan v. State*, 61 So. 3d 887, 893 (¶24) (Miss. 2011) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).  All evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence. *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006) (citation omitted).

¶14.    First-degree murder is defined as the killing of a human being "with deliberate design to effect the death of the person killed . . . ."  Miss. Code Ann. § 97-3-19(1)(a).  In Mississippi, "deliberate design" and "malice aforethought" are considered synonymous terms, and both "connote an intent to kill." *Sands v. State*, 62 So. 3d 374, 378 (¶24) (Miss. 2011) (quoting *Wilson v. State*, 936 So. 2d 357, 363-64 (¶17) (Miss. 2006)).  "This intent may be 'formed quickly,' even 'moments before the act' and may be inferred from the use of a deadly weapon." *Id.* at 378-79 (¶24).  "[I]ntent may be proven . . . by showing the acts of the person involved at the time, and . . . the circumstances surrounding the incident." *Boyd v. State*, 977 So. 2d 329, 335 (¶23) (Miss. 2008) (citation omitted).  Intent is a question of fact gleaned by the jury. *Id.* (quoting *Wheat v. State*, 420 So. 2d 229, 238 (Miss. 1982)).

---

[2] Under the direct-remand rule, "when a conviction is reversed due to insufficient evidence, 'no new trial is required and the defendant may be remanded for re-sentencing on the lesser included offense where proof establishes the lesser offense." *Hill v. State*, 929 So. 2d 338, 341 (¶10) (Miss. Ct. App. 2005) (quoting *Shields v. State*, 722 So. 2d 584, 585 (¶7) (Miss. 1998)).

¶15. The jury was instructed that to find Collins guilty of first-degree murder, it must find he "unlawfully, willfully, and feloniously, with malice aforethought kill[ed] and murder[ed] Devin Mitchell, without authority of law and not in necessary self-defense." If the jury found Collins not guilty of first-degree murder, it was instructed to consider the lesser-included offense of second-degree murder. Second-degree murder is killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual . . . ." Miss. Code Ann. § 97-3-19(1)(b). The jury was instructed that if it found Collins not guilty of second-degree murder, it could consider whether Collins was guilty of culpable-negligence manslaughter. The jury could also consider imperfect-self-defense manslaughter.

¶16. Collins claims that the State failed to present evidence that he intended to shoot Devin. Thus, Collins argues he is guilty, at most, of second-degree murder, which does not require an intent to kill an individual, but only "an act eminently dangerous to others and evincing a depraved heart." Collins contends he shot in the direction of where he heard shots fired, but not specifically at Devin.

¶17. We are not persuaded by this argument. The jury could find proof beyond a reasonable doubt of the element of deliberate design or malice aforethought by Collins's acts and the circumstances at the time of the killing. Collins shot several times in quick succession with a deadly weapon, in many different directions. He admitted in his interview he intentionally shot multiple times in the direction of Devin, who he thought was "after him." Collins also stated he was trying to "spook" the hooded "little dude," which the jury

8

could have reasonably identified as Devin. Even though Collins was ambiguously trying to "get them before they get me," his paranoia at the time of the shooting did not relieve him of culpability for Devin's murder. He claimed he heard a pop before he opened fire, but he never claimed anyone shot at him; so there is no evidence of self-defense. Further, three witnesses claimed there was no gunfire or fireworks directly preceding the shooting. Collins changed his story several times about where he was standing when he fired his weapon. He also identified the shooter as wearing the same clothing Devin was wearing that night.

¶18. Viewing the evidence in the light most favorable to the State, there was sufficient proof of the elements of first-degree murder, including deliberate design, beyond a reasonable doubt, to convict Collins.

## II. Ineffective Assistance of Counsel

¶19. Collins argues that he received ineffective assistance of counsel because defense counsel failed to stipulate to prior convictions for purposes of Counts II and III, and failed to object to certain prejudicial prior-bad-act evidence.

> While this Court may consider the merits of a claim of ineffective assistance of counsel raised for the first time on direct appeal, it is unusual to do so because "we are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim."

*Ragland v. State*, 50 So. 3d 1041, 1044 (¶8) (Miss. Ct. App. 2010) (quoting *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003)). The appropriate conclusion is usually "to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2003) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)). We will reach the merits on an ineffective-

assistance claim only in instances where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Wilcher*, 863 So. 2d at 825 (¶171). Here, the State stipulated that the record is adequate to allow this Court to address Collins's claim.

¶20.    The test for an ineffective-assistance-of-counsel claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Brown v. State*, 798 So. 2d 481, 493 (¶14) (Miss. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).  A defendant "must prove, under the totality of the circumstances that (1) his attorney's performance was defective and (2) the deficiency deprived the defendant of a fair trial." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (citing *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995)).  "Prejudice" in this instance means that but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Brown v. State*, 798 So. 2d 481, 493-94 (¶14) (Miss. 2001) (citation omitted).  There is a "strong but rebuttable presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hiter*, 660 So. 2d at 965.

¶21.    Without objection from defense counsel, after opening statements, the State entered an order into evidence showing Collins had a prior felony conviction for aggravated assault in 1998.  On appeal, Collins argues that his trial counsel was ineffective for not stipulating to his status as a previously convicted felon in order to prove the first element of the charge

10

of felon in possession of a firearm. However, as the State points out, this decision has been found to be a reasonable trial strategy. Generally, actions which fall under acceptable "trial strategy" include failure to call certain witnesses and make certain objections, and do not necessarily render counsel's actions ineffective. *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995). This Court has stated that stipulating to the prior felony could give "the jury the impression that the defen[se] had some reason to hide facts of the prior cases from them." *Williams v. State*, 819 So. 2d 532, 538 (¶18) (Miss. Ct. App. 2002). Moreover, there is always "a strong, yet rebuttable, presumption that the actions by defense counsel are reasonably strategic." *Id.* (citing *Cole*, 666 So. 2d at 775). The decision not to stipulate to a prior felony was neither deficient nor prejudicial to Collins, and was reasonable trial strategy under the circumstances.

¶22. Collins also argues that his trial counsel was ineffective for failing to object to Dr. Lott's testimony of Collins's prior bad acts. Mississippi Rule of Evidence 404(b)(1) prohibits the introduction into evidence of a defendant's other crimes or bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, evidence of other crimes or bad acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). The reason this type of evidence is not admissible "is to prevent the State from raising the inferences that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *Denham v. State*, 966 So. 2d 894, 898 (¶18) (Miss. Ct. App. 2007) (citing *White v. State*, 842 So. 2d

11

565, 573 (¶24) (Miss. 2003)).

¶23. Here, Dr. Lott, the sole defense witness, testified to information contained in his psychological evaluation report, which was marked for identification purposes but never entered into evidence. During direct examination, it was Dr. Lott's opinion that Collins was paranoid and possibly delusional during the shooting. Dr. Lott explained that part of his opinion was based on Collins's history of "conduct-disorder" behavior. On cross-examination, specific information was elicited from Dr. Lott and his report that Collins had some outstanding warrants for malicious mischief and domestic violence, suspension from school for fighting, shooting his stepfather for hitting his mother, and generally a long-term history of impulsive and aggressive behaviors beginning as early as adolescence. The defense did not object to this testimony.

¶24. Through Dr. Lott's testimony, the defense attempted to establish that, while Collins was not legally insane, he was delusional during the shooting. Dr. Lott also suspected that Collins was delusional during some of these prior acts; however, he admitted there was no way to know unless someone had evaluated Collins at that time, and there was no record of such. The State appeared to be trying to show that the history of bad acts could not be attributed to a history of mental disorders, because there was none – thereby undermining Dr. Lott's opinion that Collins was delusional. The questioning on bad acts was not to imply guilt for the current crime. Furthermore, failure to object to the testimony is not deficient performance by counsel, and here did not rise to the level of prejudice to change the outcome of the trial. The record does not support Collins's claim of ineffective assistance of counsel.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; AND COUNTS II AND III, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS FOR EACH COUNT, WITH ALL SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**