# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00814-COA

LARRY D. WALDON A/K/A LARRY WALDON                      APPELLANT
A/K/A LARRY WALTON A/K/A LARRY D.
WALTON

v.

STATE OF MISSISSIPPI                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2017 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| | BENJAMIN A. SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT**:

¶1.    A Forrest County jury found Larry D. Waldon guilty of grand larceny. The trial court sentenced him, as a habitual offender, to ten years of incarceration without eligibility for parole or early release. Finding no error, we affirm.

## FACTS

¶2.    On November 23, 2015, Geoffrey McGowan drove his 2011 Chevy Tahoe to a

friend's house. While there, he left his vehicle running in front of the house. When he came out, his vehicle was missing. He called 9-1-1, and Officer Eric Mitcham responded. At 8 p.m., Officer Mitcham arrived at 1001 Mamie Street in Hattiesburg, Mississippi, where McGowan indicated he was located. He and McGowan got in touch with OnStar,[1] and the service located the vehicle within fifteen minutes. OnStar was able to control the speed of the vehicle, and prevent it from going faster than five miles per hour. After a slow chase by Officer Mitcham and other officers, the vehicle was stopped, and its driver, Waldon, was arrested.

¶3.     On March 20, 2017, after a trial, a jury returned a guilty verdict, and thereafter he was sentenced. Waldon now appeals. For the following reasons, we affirm.

## DISCUSSION

### A.      Sufficiency of the Evidence

¶4.     Waldon first asserts that the evidence was insufficient to support the conviction. Waldon argues that McGowan admitted lying to the police regarding his actual location, his reason for being there, and the person whom he was visiting. This admission, he argues, "casts a strong shadow on [McGowan's] veracity for the truth," and his testimony alone should be insufficient. In addition, Waldon argues, that when questioned, he had explained that he had rented the vehicle from an individual named David Wilson at the nearby Wendy's parking lot earlier that day. Therefore, he argues, the jury should accept his version of the

---

[1] OnStar is a company that provides a roadside assistance service.

events over McGowan's testimony.

¶5. At trial, McGowan testified that he went to Chase Neil's house on Mamie Street. McGowan testified that he went there to purchase marijuana. He stated that he went inside for no more than five minutes, leaving his vehicle running in the front of the residence because he was having battery trouble. He explained that he owned the stolen vehicle, a silver 2011 Chevy Tahoe. He testified that he was embarrassed about the reason he was at Neil's house, so he informed the police that he was visiting a friend named "John" at 1001 Mamie Street.

¶6. On cross-examination, McGowan testified that he was on Mamie Street when the incident occurred but that he did not remember the exact address. He testified that he initially told the police that he was at 1001 Mamie Street and later told the police he was actually on the corner of Hutchinson and Mamie when the vehicle was stolen. He admitted that when he first talked to the police that he did not tell them that he was on Mamie Street to purchase marijuana. He testified that he made up the alias "John" and the address 1001 Mamie Street to protect his friend.

¶7. Officer Mitcham testified that he was working as a patrol officer for the Hattiesburg Police Department on the evening of November 23 and was dispatched to 1001 Mamie Street, arriving around 8 p.m. When he arrived, he spoke with McGowan. Officer Mitcham explained that he and McGowan called OnStar, and OnStar was able to locate the vehicle. Officer Mitcham was advised that the vehicle was going northbound on Highway 42 and that

OnStar had disabled the vehicle so it could not go over five miles per hour. Officer Mitcham, along with several other officers, became involved in a slow chase to recover the vehicle.

¶8. Officer Mitcham stated that the driver did not stop even though officers were giving loud verbal commands over their PA system, police lights were flashing, and the sirens were on. Officers followed Waldon for seven or eight miles. Officer Mitcham then testified that he and Officer Chadra Daniels drove in front of the vehicle and deployed a spike strip. Officer Mitcham explained that Lieutenant Mark Denny then ran up to the vehicle, which then had a flat tire; they broke the glass, grabbed the steering wheel, and guided the vehicle into a ditch on the side of the road. Officer Mitcham identified Waldon as the driver, pointing to him in open court. Officer Mitcham confirmed there was no other person in the vehicle.

¶9. Officer Mitcham continued to testify about the initial statement McGowan reported—he was at his friend John's house and that he was only there for about five minutes. Officer Mitcham explained at trial that he went back to speak with McGowan approximately an hour after their first meeting and that McGowan informed him that there was in fact no friend named "John" and that his friend did not really live at 1001 Mamie Street, but instead he lived a few houses down the street near the corner of Mamie and Hutchinson. Officer Mitcham stated that he never received the name of the friend but that McGowan admitted he was there to purchase marijuana.

¶10.  During his testimony, Officer Mitcham explained that his dash camera captured footage from the chase. Officer Mitcham also noted that in his investigation, no one, to his knowledge, with or without a camera, witnessed the vehicle being stolen.

¶11.  Detective Tamara Moore was the on-call detective that night and testified at trial. She arrived where the pursuit ended on Highway 49 at approximately 9 p.m. Detective Moore spoke to Waldon, who was then in custody. Waldon waived his *Miranda*[2] rights and told Detective Moore that he rented the vehicle from his friend, David Wilson, in the Wendy's parking lot located nearby—about an hour before he was stopped by police. According to Waldon, they were headed to Laurel.

¶12.  Detective Moore went to the Wendy's where Waldon claimed he arranged to rent the vehicle. Detective Moore testified that she asked the staff, but none claimed to have noticed a Chevy Tahoe being rented in the parking lot. She further noted that Wendy's security cameras were only inside the restaurant, facing the register; none faced the parking lot.

¶13.  Waldon signed a *Miranda* waiver and spoke with Detective Moore for a second time. In his second statement, Waldon claimed a female friend, Brenda, dropped him off at Wendy's. According to Waldon, David Wilson showed up in a Chevy Tahoe and asked if he wanted to rent it for money or drugs. Waldon gave him $60 for the vehicle, but Waldon explained that first Wilson needed to drive to Ellisville. According to Waldon's statement, he and Wilson and a woman drove to an Ellisville gas station to meet someone and came

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

back to Hattiesburg. Waldon claimed to have dropped off Wilson and the unidentified woman on Highway 49 when he was stopped by police.

¶14. Detective Moore pointed out that Waldon's story changed his destination from Laurel to Ellisville. Furthermore, Detective Moore stated that it was not possible for someone to go from the Wendy's parking lot to Laurel, or Ellisville, and be headed back on Highway 49, where he was stopped within the time of OnStar locating and slowing the vehicle—about fifteen minutes.

¶15. Detective Moore testified that OnStar was unable to trace where the Tahoe had traveled before it was reported stolen. On cross-examination, Detective Moore stated that she never attempted to talk to McGowan's friend. She further testified that neither she, nor anyone to her knowledge, went to the location or interviewed any of the individuals that lived where McGowan purchased the marijuana. Detective Moore stated her reasons for charging Waldon with grand larceny were because McGowan did not know Waldon; because McGowan did not give Waldon permission to use the vehicle; because Waldon was driving the vehicle at the time of the arrest; and, because she could not verify Waldon's statements.

¶16. "The reviewing court must determine whether, when viewing the evidence in the light most favorable to the State, any rational juror could have found that the State had proved each element of the crime charged beyond a reasonable doubt." *Gunn v. State*, 56 So. 3d 568, 571 (¶8) (Miss. 2011). Mississippi Code Annotated section 97-7-42 (Rev. 2014) defines grand larceny as:

6

(1) Any person who shall, willfully and without authority, take possession of or take away a motor vehicle of any value belonging to another, with intent to either permanently or temporarily convert it or to permanently or temporarily deprive the owner of possession or ownership, and any person who knowingly shall aid and abet in the taking possession or taking away of the motor vehicle, shall be guilty of larceny . . . .

At issue here is the "taking" element of the offense. Waldon argues he borrowed the vehicle. He does not dispute that he was driving the vehicle when the police pursued him. The State offers *Acker v. State*, 793 So. 2d 691, 694 (¶11) (Miss. Ct. App. 2001), to support its contention that since the vehicle owner testified that he did not give permission for Waldon to take his car, this testimony was sufficient to support the conviction. This Court's review of the sufficiency of evidence is well established:

¶17.   [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. All evidence consistent with the defendant's guilt will be accepted as true, together with all favorable inferences that may be reasonably drawn from the evidence.

*Collins v. State*, 221 So. 3d 366, 370 (¶13) (Miss. Ct. App. 2016) (citations and quotation mark omitted).

¶18.   Waldon asks this Court to take his word over that of McGowan, the owner of the vehicle. We cannot. Evaluating the credibility of witnesses, and determining whose testimony should be believed, is charged to the jury alone. *Wallace v. State*, 139 So. 3d 75, 78 (¶8) (Miss. Ct. App. 2013). Here, we find the evidence was such that a reasonable and fairminded juror could find Waldon guilty.

   **B.   Witness Testimony**

7

¶19.    Waldon asserts that the trial court erred in allowing the State to call a witness who was not previously disclosed.  Specifically, the witness was called to clarify issues of identifying the location where a 9-1-1 phone called is placed.

¶20.    On cross-examination, Officer Mitcham testified that he was dispatched to 1001 Mamie Street.  However, the standard call report he was shown at trial reflected that the call area was 1507 High Street.  Officer Mitcham did not know why that address was listed in the report and could not explain the inaccuracy of the address listed, believing that is "something that dispatch deals with."  He testified that when he showed up at 1001 Mamie Street, McGowan was present.  When questioned further about the 1507 High Street address, the officer stated that there is a Wendy's near that location.

¶21.    After Officer Mitcham finished his testimony, there was a bench conference where the State claimed Waldon had asserted that 9-1-1 dispatch officials had actual capability of placing the caller at 1507 High Street without evidence to support the conclusion.  The State requested that it be allowed to subpoena a person from 9-1-1 dispatch in order to testify with regard to the capability, or lack thereof, in determining the physical location of a caller.  Despite some reluctance, the trial court allowed the issuance.

¶22.    Derinda Albritten, a dispatcher at the Hattiesburg Police Department, testified that the only information that she receives regarding the location of an incoming 9-1-1 call made on a cell phone is the cell-phone tower location that a call relays from.  She explained that she would have to ask the caller questions to find out where the person is physically located.  She

8

went on to state that 1507 High Street is the address of the cell phone tower that relayed the call to 9-1-1 on this night, triggering the investigation described above.

¶23. "The standard of review for both the admission or exclusion of evidence is abuse of discretion." *Walls v. State*, 928 So. 2d 922, 926 (¶9) (Miss. Ct. App. 2006) (citing *Harrison v. McMillan*, 828 So. 2d 756, 765 (¶ 27) (Miss. 2002)). "Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party." *Id*. (citing *Gibson v. Wright*, 870 So. 2d 1250, 1258 (¶28) (Miss. Ct. App. 2014)). "There is a two-part test to determine the admissibility of lay witness opinion testimony." *Id.* at (¶10). "The information must assist the trier of fact and the opinion must be based upon first hand knowledge." *Id.* (citing *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1996)). "A layperson is qualified to give an opinion based upon his first hand knowledge that other lay people do not possess." *Id.* (citing Wells v. State, 604 So. 2d 271, 279 (Miss. 1992)).

¶24. Here, Albritten's testimony was to clarify for the jury that the address provided on the report, based on information provided by the equipment she operates, was the location of a cell phone tower. Waldon and the State look to *Dillard v. State*, 811 So. 2d 389 (Miss. Ct. App. 2001). In *Dillard*, Dillard argued that two witnesses that testified were not disclosed on the witness list in violation of Rule 9.04(A)(2) of the Uniform Rules of Circuit and

9

County Court,[3] which reads, in pertinent part:

> A. [T]he prosecution must disclose to each defendant or to defendant's attorney . . . the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
>
> (1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial . . . ;
>
> (2) Copy of any written or recorded statement of the defendant and the substance of any oral statement of the defendant . . . .

Dillard argued the court should have excluded the evidence.

¶25. The State's position is the same as in *Dillard* and points to Rule 9.04(I), subsections

(1) and (2), for the remedy, which stated:[4]

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
>
> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, . . . and
>
> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

The State argues that the trial court did not err because Waldon did not claim unfair surprise

---

[3] Mississippi Rule of Criminal Procedure 17.2 now governs discovery violations in criminal cases, which became effective July 1, 2017, after the occurrences in this case.

[4] Again, the Mississippi Rules of Criminal Procedure now control discovery violations.

or undue prejudice and did not seek a continuance or mistrial. After a review of the record, we cannot find that Waldon suffered prejudice or that he was the victim of unfair surprise. Furthermore, Waldon did not pursue a continuance to interview the witness. In addition, Waldon was able to cross examine the witness at trial. On appeal, Waldon does not claim that he was prevented from presenting evidence or a defense because of this witness. We, therefore, defer to the trial court's discretion to allow Albritten to testify.

### C. Leading Question

¶26. Waldon also asserts that he was denied a fair trial because the trial court allowed the State to use a leading question when Albritten testified. At trial, the following colloquy occurred:

> Q. Good afternoon, Ms. Albritten. How long have you been a dispatch manager at the Hattiesburg Police Department?
>
> A. About 20 years.
>
> Q. Now, I'd like to direct your attention to 2015. At that time can you tell the jury whether or not if someone made a 9-1-1 call from a cell phone - -
>
> MR. WALLACE: Objection to leading, Your Honor.
>
> THE COURT: I'm going to allow it. Go ahead.

¶27. Waldon asserts that trial court erred in allowing this question to be answered and points to Mississippi Rule of Evidence 611(c), which reads:

> Leading Questions. Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

11

(1) on cross-examination; and

(2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

The decision to allow leading questions is one that rests within the discretion of the trial court, and we will reverse such a decision only upon a showing of abuse of discretion. *Hughes v. State*, 735 So. 2d 238, 278 (¶191) (Miss. 1999). The Supreme Court of Mississippi has pointed out that the trial court has some discretion in allowing leading questions in order to develop preliminary matters. *See Gates v. State*, 936 So. 2d 335, 341 (¶23) (Miss. 2006). Again, we point out that Albritten's testimony was to clarify that the address on the police report was the location of the cell tower from where the cell phone call was transmitted to 9-1-1. The trial court did not err in allowing a leading question in an effort to develop the particular information at issue. We cannot find an abuse of discretion, and therefore we find no merit to this argument.

### D. Pro Se Brief

¶28. Waldon, in his pro se brief, complains of a myriad of issues directed toward his counsel. Among them are: (1) failure to subpoena eyewitnesses or investigate; (2) failure to subpoena dashboard camera footage and corroborate the police officers' stories; (3) failure to subpoena towing company records; (4) failure to "dive further into the cross-examination" of Tamara Moore; (5) failure to "attack credibility of the alleged victim regarding his whereabouts that night"; (6) failure to "take pictures of the crime scene"; (7) failure to "discuss case theory with defendant"; (8) failure to pursue a "claim of defective indictment";

12

(9) failure to obtain the "names of the victim's friend"; (10) failure to "object when State's witness entered trial without being subpoenaed"; (11) failure to allow "[Waldon] to have a say and/or pick the jurors he wanted"; (12) failure to answer "[Waldon's] questions about jury instructions for Defendant's personal understanding"; (13) failure to let "[Waldon] see the jury instructions"; (14) failure to "suppress irrelevant and prejudicial testimony"; (15) failure to address motion for habeas corpus relief; (16) failure to object to an individual; and (17) failure to object to an individual walking in and out of the trial "if though he's the Prosecutor of my case."

¶29.   Several of these issues have been addressed in this opinion.   However, issues regarding ineffective assistance of counsel on a direct appeal are not usually considered on the merits because "[w]e are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim." *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)).   Here, there is no stipulation made by the parties as to the record.   As such, this Court will reach the merits of an ineffective-assistance claim only in instances where: "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id.*  Here the record is insufficient to support a claim of ineffective assistance of counsel, so "[t]he appropriate conclusion is to deny relief, preserving the defendant's right to argue the same

issue through a petition for post-conviction relief." *Id.* (quoting *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)).

¶30.    Other issues are not found within the record, and they are merely assertions not supported by citation to the record or to cases supporting the assertions.    Issues that have not been briefed or argued are barred on appeal.  *Gilmer v. State*, 955 So. 2d 829, 837 (¶29) (Miss. 2007).    Waldon was required to raise the issue and meaningfully support his assignments of error with "the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on."  *Hill v. State*, 215 So. 3d 518, 524 (¶20) (Miss. Ct. App. 2017) (quoting M.R.A.P. 28(a)(7)).    "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar."  *Id.* (quoting *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008)). For the foregoing reasons, we affirm the ruling and sentence of the trial court.

¶31.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**