# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00446-COA

SARRAH BROWN                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                            APPELLEE

DATE OF JUDGMENT:            03/01/2022
TRIAL JUDGE:                 HON. TOMIE T. GREEN
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: ZAKIA BUTLER CHAMBERLAIN
                             SARRAH BROWN (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:           JODY EDWARD OWENS II
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 11/14/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Sarrah Brown was convicted of first-degree murder and shooting into a vehicle for the shooting death of Philip Lee in Hinds County.  On appeal, Brown argues that (1) there was insufficient evidence of deliberate-design murder, (2) the judge erred by failing to instruct the jury on second-degree murder, and (3) the forensic psychologist was denied the necessary medical records to conduct Brown's psychological examination.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In the early morning of June 14, 2014, surveillance video at a Jackson convenience store showed a silver Toyota pull into the parking lot. Brown was in the passenger seat while her husband was driving the car. She and her husband were coming from a wedding where they had been drinking and smoking marijuana. Brown's husband entered the store, and on his way back to the vehicle, he interacted with a man in another parked car. The interaction seemed affable, with the two men shaking hands, laughing, and talking. Brown's husband entered his vehicle and began to drive out of the parking lot. Before they left the parking lot, Brown rolled down her window and pointed a gun toward the other car parked at the store. The video showed a flash from the window, followed by the shattering of the other car's back window. The victim, Philip Lee, was sitting in the back seat and was shot through the eye, causing his death. The silver Toyota sped off immediately after the shooting.

¶3. Police arrived at the scene and began investigating. A few hours later, the police picked up Brown and her husband who had returned to the scene of the crime. The police took Brown in for questioning, and Brown voluntarily waived her *Miranda*[1] rights. During this interview, Brown admitted that she was in the passenger seat of the silver Toyota and that she shot the gun out of the window. However, she explained that she was not shooting at anyone in particular but, instead, was firing randomly at the ground.

¶4. Brown was charged with first-degree murder and shooting a firearm into a vehicle. The State showed the jury the surveillance video from the gas station, and the jury heard testimony from the detective in charge of the case and the crime scene investigator assigned

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

to the case. The jury also heard from three expert witnesses. David Whitehead testified that gunpowder residue was present on the samples that police collected from Brown and concluded that Brown either (1) discharged the weapon, (2) was in the vicinity of the discharge, or (3) the residue was transferred to her. Felicia McIntyre testified that the ballistics of the gun found in the silver Toyota matched the ballistics of the gun that killed Phillip Lee. Finally, Dr. Mark LeVaughn testified that he performed an independent autopsy of the victim and concluded that the manner of death was a gunshot wound to the head and that it was a homicide.

¶5. Dr. Chris Lott, a clinical and forensic psychology expert, testified for Brown. Dr. Lott conducted a court-ordered, independent psychological examination of Brown. Lott testified that Brown suffered from schizophrenia and that she had not been taking her medication leading up to the incident. He further testified that this mental illness was well documented throughout Brown's life. During the exam, Brown explained that she was hearing threatening voices from the Ku Klux Klan and that she shot the gun in the parking lot to scare the voices away. He testified that Brown was competent to stand trial, that she appreciated right from wrong on the day of the incident, and that it would have been wrong to shoot someone. He testified that he believed Brown was shooting at random to scare or intimidate someone in response to "hostile communications between her and someone in the car beside her."

¶6. After both parties rested, the parties discussed which jury instructions would be read. The State intended to read the jury instructions for (1) first-degree murder (deliberate design

murder); (2) second-degree (depraved heart murder); and (3) manslaughter. The judge ruled that she would not read the instruction for depraved heart murder because the State could not instruct the jury on both deliberate design and depraved heart murder. The defense did not object; in fact, Brown's counsel claimed he took issue with the depraved heart murder instruction. The jury convicted Brown of both counts, and she was sentenced to life imprisonment with eligibility for parole for the murder, and she was sentenced to five concurrent years in custody, with five years suspended and three years of post-release supervision, for shooting into a vehicle. Brown appealed.

## DISCUSSION

¶7. Brown's appellate counsel claims that the State provided insufficient evidence to convict her of first-degree murder and that the trial court erred by refusing to instruct the jury on second-degree murder. In addition, Brown filed a pro se supplemental brief and claims that the State provided insufficient evidence to convict her of first-degree murder and that the trial court erred by "pressuring" Dr. Lott to testify without allowing him to review all of Brown's medical records.[2]

---

[2] Brown claims four issues under her "Statement of Issues" section in her supplemental brief, yet she only argues two of those issues (discussed herein). *See Arrington v. State*, 267 So. 3d 753, 756 (¶8) (Miss. 2019) ("The law is well established that points not argued in the brief on appeal are abandoned and waived."). The two issues she raises but fails to argue are: (1) "[w]hether the district court failed in questioning the [two] suspects that were in the same car as the victim[,] . . ." and (2) "[w]hether Sarrah's interview with police is even admissible due to actual mental state at [the] time of [the] tragedy." Although not briefed, we note that the two "suspects" in the victim's vehicle were both questioned by police, and the crime scene investigator testified that the shot killing the victim came from outside of the vehicle, not inside. As for the second issue, Dr. Lott watched the video of Brown's interview with the police and did not notice any psychotic symptomatology. He also determined it was more likely than not that Brown appreciated the nature and quality

### (1) Sufficiency of the Evidence

¶8.    "When addressing a challenge to the sufficiency of the evidence, the question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt . . . but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Holland v. State*, 290 So. 3d 754, 761 (¶24) (Miss. Ct. App. 2020) (quoting *McCarty v. State*, 247 So. 3d 260, 268 (¶23) (Miss. Ct. App. 2017)).

¶9.    First-degree murder is defined as killing a human "with deliberate design to effect the death of the person killed." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014). "[I]ntent may be prove[d] . . . by showing the acts of the person involved at the time, and the circumstances surrounding the incident." *Pace v. State*, 369 So. 3d 588, 597 (¶31) (Miss. Ct. App. 2023) (quoting *Collins v. State*, 221 So. 3d 366, 371 (¶14) (Miss. Ct. App. 2016)). "Furthermore, it 'may be formed quickly, even moments before the act and may be inferred from the use of a deadly weapon.'" *Id.*; *see Childs v. State*, 133 So. 3d 348, 352 (¶17) (Miss. 2013) ("Deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which based on its manner of use, is calculated to produce death or serious bodily injury.").

¶10.    Brown's statement to police was that she was shooting at the ground but that another person may have been simultaneously shooting and killed Lee. In addition, she argues that she had no intent to kill Lee, pointing out she voluntarily turned herself in to the police and of her actions on the day of the incident.

5

confessed to shooting the gun. Despite Brown's arguments, the jury has the ability to weigh this testimony, and their factual determinations must be respected where, in the light most consistent with guilt, there was sufficient evidence to support the finding. *Boyd v. State*, 977 So. 2d 329, 335 (¶28) (Miss. 2008). Here, the jury saw the video of Brown pointing a gun out of the silver Toyota followed by a flash and immediately the window of the victim's car exploded. Brown admitted she was in the car, admitted to shooting the gun, and admitted that she saw no other gun and no other shooter. The State's expert McIntyre's testimony matched the gun found in the silver Toyota to the one that killed Lee using ballistic analysis.

¶11. In her supplemental brief, Brown basically makes the same argument as counsel, specifically arguing that the video did not definitively show her pointing/shooting the gun, that the State did not establish that she was aiming at the victim, and that she maintained she purposefully shot at the ground and not at anyone else. She quotes *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985), where the Mississippi Supreme Court stated, "If the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion [for judgment notwithstanding the verdict] is required." However, the next sentence in that opinion states:

> On the other hand, if there is substantial evidence opposed to the motion—that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense—the motion should be denied.

*Id*. A rational jury could infer the required intent from Brown's use of the gun and the

evidence presented at trial. Furthermore, "the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Nicholson v. State*, 523 So. 2d 68, 70 (Miss. 1988). Because a rational jury could find all the essential elements of deliberate-design murder beyond a reasonable doubt, we find the evidence is sufficient to support the jury's verdict.

### (2) Failure to Instruct Jury on Second-Degree Murder

¶12. Brown argues that the court erred by refusing to instruct the jury on second-degree murder after erroneously concluding the jury could not consider a theory of deliberate-design murder and of depraved heart murder. The State does not dispute Brown's argument and, instead, contends that the argument is waived for Brown's failure to object during trial. "This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." *Neal v. State*, 15 So. 3d 388, 397 (¶13) (Miss. 2009) (quoting *Smith v. State*, 835 So. 2d 927, 939 (¶38) (Miss. 2002)). Similar cases have held that a failure to object to a jury instruction coupled with an assent from the defense in favor of the ruling procedurally bars the error on appeal. *Jones v. State*, 776 So. 2d 643, 653 (¶36) (Miss. 2000); *Tran v. State*, 681 So. 2d 514, 516 (Miss. 1996); *Butler v. State*, 544 So. 2d 816, 818 (Miss. 1989). Brown's counsel stated, "I was going to object to the second degree, but that one is not being given . . . ." Because Brown's counsel did not object to the judge's refusal and agreed with the judge's decision to refuse the instruction, this issue is waived. Therefore, we will not consider it.

### (3)  Dr. Lott's Testimony

¶13.  Brown claims in her supplemental brief that Dr. Lott was pressured into proceeding with Brown's examination without all the medical records that Dr. Lott requested.  She implies that the University of Mississippi Medical Center purposefully withheld information because it was trying to "build a case" against Brown in relation to her supposed self-medication with drugs.  While it is true that Dr. Lott did not receive all the medical records he asked for, he testified at trial that he received the vast majority of medical records.  Furthermore, Dr. Lott testified that his opinions regarding Brown's mental state at the time of the incident and at trial were based on his interview with Brown, the video of the police interview, and Dr. Lott's interview with Brown's parents.  Dr. Lott testified that he was able to supplement some of the missing records through the interviews he conducted with Brown and Brown's parents.  Ultimately, Dr. Lott testified he was able to formulate an opinion with the records he reviewed.  Therefore, this issue lacks merit.

### CONCLUSION

¶14.  We find that there was sufficient evidence presented at trial to support the jury's verdicts in this case.  Because Brown did not object to the judge's refusal to read the second-degree murder jury instruction, this issue is waived on appeal.  Finally, Brown's claim that Dr. Lott did not have all the necessary medical records to conduct Brown's examination is without merit.

¶15.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, PJJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

8