KITCHENS, Justice,
for the Court:
¶ 1. Glenn Wane Hawkins was convicted by a jury of murdering his girlfriend, Rita Fair, and given a mandatory life sentence. Hawkins timely filed this direct appeal, claiming that the evidence was insufficient to support a conviction. Hawkins also raises issues regarding a jury instruction which outlined the distinctions between depraved heart murder and culpable negligence manslaughter. Finding no error, we affirm his conviction and sentence.

Facts

¶ 2. In the early morning hours of August 16, 2007, Deputy Sheriff John Bishop of Monroe County was dispatched to the home of Glenn Wane Hawkins and Rita Fair. On arrival, Hawkins met the deputy sheriff at the front door. According to Bishop, “I asked [Hawkins] what was going on, and he told me that he killed her.” Bishop then placed Hawkins, handcuffed, in his patrol car, and activated the vehicle’s audio/video recording system.
¶ 3. This recording was played for the jury. Although Hawkins did not appear on screen, the recording system captured his statements to the investigating officers. Hawkins said that he and Fair were fighting because Fair had told him she was seeing someone else. According to Hawkins, he and Fair “were tussling and she fell down. She was scrapping with me and next thing I knew, she wasn’t breathing no more. Went into a blackout I guess. We were both drinking.” Hawkins said that “[w]hen we was fighting, I’m sure I did hit her,” but later said “I may have hit her, I may not have.” He also told the officers, “I called my son ... I told my son I killed her. I done wrong.” Hawkins also asked for a preacher, saying “God ain’t gon’ forgive me.”
¶ 4. Curtis Knight, Chief Investigator with the Monroe County Sheriffs Department, also was called to the scene that night. He testified that he found Fair’s body lying in a bedroom doorway, and that she had sustained “severe trauma” to her face, neck, and arms. According to Knight, Fair’s right eye was swollen shut, and she had a bloody nose. Pictures of Fair’s body, depicting these injuries, were shown to the jury.
¶ 5. Knight also testified that the day after Hawkins was arrested, Hawkins told Knight that Fair had tried to stab him with a knife. Hawkins then showed Knight what Knight described as “two scratches” on Hawkins’s chest. Knight took a photograph of Hawkins’s chest, and this photograph was shown to the jury. Knight testified, without objection, that the “scratches” were “not consistent with a knife wound.” According to Knight, no weapon was found near Fair’s body, but he did find a fake fingernail nearby that appeared to have been dislodged from Fair’s finger.
¶ 6. Dr. Steven Hayne performed an autopsy for the State. He testified that Fair had “severe cardiovascular disease,” and that her death was “the product of an assault, blunt force trauma, producing cardiovascular death through arrhythmia.” Dr. Hayne also testified at length about *641 the various injuries to Fair’s body, including what he described as “defensive posturing injuries.” A toxicology report revealed that, prior to her death, Fair had consumed alcohol and several different prescription pain relievers. According to Dr. Hayne, the drugs and alcohol would have caused impairment, but they would not have caused Fair’s death.
¶ 7. Dr. James Lauridson, another forensic pathologist, testified for the defense. Dr. Lauridson opined that, based on national standards, there was not enough information for Dr. Hayne to rule the death a homicide. According to Dr. Lau-ridson, Dr. Hayne should have dissected the bruising and examined the tissue under a microscope to determine whether those injuries had occurred near the time of the heart attack. Dr. Lauridson also testified that the injuries on Fair’s arms were not defensive wounds, and the injuries to her face were consistent with a fall and not an assault.
¶ 8. After hearing all the evidence, the jury was instructed on the elements of depraved heart murder and culpable negligence manslaughter. During deliberations, the jury sent four separate notes to the trial judge indicating that the jurors did not understand the difference between the two crimes. Each time, the trial judge conferred with the attorneys, and, after the fourth note, the judge gave the jury an additional instruction on the difference between depraved heart murder and culpable negligence manslaughter. Hawkins did not object to the instruction, and he never requested a mistrial. The jury ultimately found Hawkins guilty of depraved heart murder.

Issues

¶ 9. Hawkins raises three separate issues on appeal: (1) whether the evidence was sufficient to support a murder conviction; (2) whether the jury was instructed properly on the distinction between depraved heart murder and culpable negligence manslaughter; and (3) whether the trial court erred in failing sua sponte to declare a mistrial based on the jury’s confusion with regard to murder and manslaughter.

Discussion

1. Sufficiency of the Evidence
¶ 10. As an initial matter, the State argues that Hawkins waived any argument regarding the sufficiency of the evidence when he presented his own expert witness after his motion for a directed verdict had been denied. The State cites Hughes v. State, 735 So.2d 238, 279 (Miss.1999), to support its argument, but nothing in the Hughes decision speaks to this issue. In fact, this Court explicitly rejected the State’s argument twenty-five years ago:
By offering evidence of his own, the defendant in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict. What the waiver rule means is that the defendant must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state of the record which may have existed back when the motion for a directed verdict was originally made.
Wetz v. State, 503 So.2d 803, 808 n. 3 (Miss.1987) (emphasis added), disagreed with on other grounds by Bush v. State, 895 So.2d 836, 844 n. 3 (Miss.2005). In the present case, Hawkins renewed his motion for a directed verdict at the close of all the evidence and raised the issue again in a post-trial motion. Therefore, the sufficiency of the evidence is properly before the Court on appeal, but the verdict should be reviewed in light of all the evidence pre *642 sented at trial. Hodges v. State, 743 So.2d 319, 325 (Miss.1999).
¶ 11. In reviewing the sufficiency of the evidence on appeal, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Watts v. State, 78 So.3d 901, 903-04 (Miss.2012) (quoting Bush, 895 So.2d at 843). We will not disturb the conviction if, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Williams v. State, 35 So.3d 480, 485 (Miss.2010) (quoting Bush, 895 So.2d at 843).
¶ 12. Mississippi Code Section 97-3-19(l)(b) defines depraved heart murder as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.” Malicious intent “can be inferred from the circumstances if the actions involved a very high degree of carelessness evincing a reckless indifference to the danger to human life.” Clark v. State, 693 So.2d 927, 930 (Miss.1997) (citing Windham v. State, 602 So.2d 798, 802 (Miss.1992)).
¶ 13. Hawkins first argues that there was no evidence of “either intent to kill Rita Fair, or knowledge of her condition.” According to Hawkins, depraved heart murder and deliberate design murder are “virtually indistinguishable” and “there must be evidence of some degree of premeditation and knowledge of the outcome.” [1] Hawkins relies on Ruttley v. State, 746 So.2d 872, 879 (Miss.Ct.App.1998); yet, Hawkins misinterprets the decision. Ruttley correctly held that:
[Section] 97-3-19(a) and (b), which define premeditated murder and depraved heart murder respectively have been “coalesced” by long standing and widely accepted case law because, “as a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life.”
Id. (quoting Catchings v. State, 684 So.2d 591, 599 (Miss.1996)). Thus, while depraved heart murder “subsumes” deliberate design murder, Catchings, 684 So.2d at 599 (quoting Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992)), the inverse is not true. In other words, all murders committed with “deliberate design to effect the death of the person killed” necessarily require a “depraved heart,” but depraved heart murder does not require premeditated design. Miss.Code Ann. § 97-3-19(a), (b) (Rev.2006).
¶ 14. Hawkins also contends that the State’s medical expert did not establish the cause of Fair’s death with “medical certainty.” This argument fails for two reasons. First, Dr. Hayne responded in the- affirmative when asked whether his opinion regarding the cause of death was “within a degree of reasonable medical certainty.” Second, it has long been the law that the cause of death in a murder *643 case does not always require medical testimony and may be proved by circumstantial evidence. Coburn v. State, 250 Miss. 684, 693, 168 So.2d 123, 127 (Miss.1964) (citing Moore v. State, 238 Miss. 103, 117 So.2d 469 (1960); Watts v. State, 210 Miss. 236, 49 So.2d 240 (1950)).
¶ 15. In the present case, the State produced evidence that the victim sustained “severe trauma” to her upper body, including what Hawkins himself described as “a big ol’ ass black eye.” The jury saw photographs of Fair’s injuries and heard testimony that she had “defensive wounds.” The jury also heard Hawkins tell the investigating officers that Fair “made [him] so mad” when she said she was cheating on him, and that he was “sure” that he had hit her. Shortly after Fair’s demise, Hawkins told both his son and a deputy sheriff that he had killed her. In addition, the State’s medical expert testified that the fatal heart attack was a direct result of an assault. Although Hawkins’s medical expert testified that there was not enough information to determine the cause of Fair’s heart attack, the jury, having heard the competing medical opinions, resolved this question against the defendant. We find that the evidence was sufficient to establish the elements of depraved heart murder.
2. Jury Instruction C-9
¶ 16. Hawkins argues that the granting of Instruction C-9 was plain error, acknowledging that this issue is procedurally barred because he failed to object at trial. This Court will reverse in the absence of a contemporaneous objection, if there was error impacting a fundamental right of the accused, for example, if the trial court failed to instruct the jury on the essential elements of the crime. Berry v. State, 728 So.2d 568, 571 (Miss.1999) (citing Hunter v. State, 684 So.2d 625, 636 (Miss.1996)). In general, the overall goal of jury instructions is “fairly [to] announce the law.” Brown v. State, 39 So.3d 890, 897-98 (Miss.2010) (citing Davis v. State, 18 So.3d 842, 847 (Miss.2009)).
¶ 17. As noted above, during deliberations, the jury wrote four separate notes indicating that they did not understand the difference between culpable negligence manslaughter and depraved heart murder. After the fourth note, the trial judge gave the following, additional instruction:
Culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life. Depraved-heart murder and culpable negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice may be implied.
This instruction is taken, verbatim, from this Court’s decisions. Conley v. State, 790 So.2d 773, 793 (Miss.2001) (quoting Grinnell v. State, 230 So.2d 555, 558 (Miss.1970)); Windham, 602 So.2d at 801 (citing U.S. v. Browner, 889 F.2d 549, 552 (5th Cir.1989)); W. LaFave & A. Scott, Criminal Law §§ 30, 70 (1972)).
¶ 18. Hawkins contends that the concept of “degree” is confusing because depraved heart murder and deliberate design murder “have, in essence, merged to become one.” Thus, according to Hawkins, because no degree of recklessness can amount to premeditated design, the instruction misstated the law. As already discussed, in Issue 1, depraved heart murder does not require premeditation, and Hawkins misinterprets our case law. Miss.Code Ann. § 97-3-19(b) (Rev.2006). Hawkins’s arguments are without merit, *644 and the trial court did not err in giving Instruction C-9.
3. Failure to Grant a Mistrial
¶ 19. Hawkins argues that, rather than giving Instruction C-9, the trial judge should have declared a mistrial sua sponte. Again, Hawkins must assert plain error, because he never requested a mistrial at any point during the jury’s deliberations. In fact, defense counsel specifically requested that the jury be allowed to continue its deliberations, despite the jurors’ apparent confusion. Even if defense counsel’s request was not a result of sound trial strategy, the decision to declare a mistrial is within the trial judge’s discretion. Dixon v. State, 306 So.2d 302, 304 (Miss.1975) (quoting Gordon v. State, 149 So.2d 475 (Miss.1963)).

Conclusion

¶ 20. To establish depraved heart murder, premeditation is not required. Miss. Code Ann. § 97-3-19(b) (Rev.2006). In the present case, sufficient evidence was before the jury to establish that the defendant physically assaulted the victim, that the defendant’s actions were “eminently dangerous” and “evinc[ed] a depraved heart,” and that the victim’s heart attack resulted from Hawkins’s physical assault on Fair. Although the jury expressed difficulty understanding the distinction between murder and manslaughter, the instructions fairly announced the law, and nothing in the record suggests that the trial court should have declared a mistrial sua sponte. For these reasons, we affirm Hawkins’s conviction and sentence.
¶ 21. CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.

. Mississippi Code Section 97—3—19(l)(a) provides the definition for deliberate design murder: "The killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being.”