# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00258-COA

**GABRIEL CURTIS A/K/A GABRIEL BENJAMIN CURTIS**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:  10/08/2018
TRIAL JUDGE:  HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:  OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL BY: BARBARA BYRD
NATURE OF THE CASE:  CRIMINAL - FELONY
DISPOSITION:  AFFIRMED - 06/23/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1. Following a jury trial, Gabriel Curtis was convicted of first-degree murder and unlawful possession of a firearm by a felon. By its verdict, the jury rejected Curtis's claim of self-defense. On appeal, Curtis argues that the trial court erred by denying his proposed jury instructions on two lesser-included offenses. He also argues that his trial counsel provided ineffective assistance. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Willis Cassidy was seventy-five years old at the time of his death. Cassidy's sister

described him as "very feeble" due to chronic heart problems and lung problems caused by a long history of exposure to asbestos, which made it difficult for him to breathe. Cassidy walked slumped over with a cane as a result of complications from heart surgery.

¶3.    Curtis was Cassidy's live-in caretaker, although Curtis testified he was more of a manual laborer. At trial, Curtis claimed that Cassidy suffered from dementia and was verbally abusive and "strong" for his age. Curtis also claimed that the real reason Cassidy employed him was that Cassidy was a homosexual and desired a sexual relationship with Curtis. Curtis insisted that Cassidy did not need a cane and used it only as a "prop" to fool his sister and so that he could use an electric cart at the grocery store.

¶4.    Curtis testified that Cassidy irrationally believed that he could make a large profit by selling his house and using the money to buy and sell Katrina cottages. According to Curtis, on the evening of April 19, 2017, he told Cassidy that he would leave if Cassidy sold the house, which resulted in an argument. Curtis claimed that Cassidy then demanded oral sex and pulled a gun on him when he refused. Curtis testified that he wrestled the gun away from Cassidy and hit Cassidy in the face with it at least three times. Curtis claimed that he put the gun down, but Cassidy tried to take it back. Curtis testified that he grabbed Cassidy by the neck in order "to stand him up," although he later admitted that he "choked" Cassidy while doing so. According to Curtis, he then pushed Cassidy away, which caused Cassidy's dog to jump on the bed and begin barking. Curtis claimed he fired the gun into the bed to quiet the dog, but Cassidy then hit Curtis with a pool cue repeatedly and ordered the dog to attack. Curtis shot the dog. He claimed that the dog ran away after being shot.

2

¶5. Curtis testified that Cassidy continued to hit him with the pool cue. Curtis claimed he cocked the gun "just for effect" when suddenly it "went off," and Cassidy fell back on the couch. Curtis believed that he had shot Cassidy in the head and that Cassidy was dead. Curtis testified that he was in "shock" and went to another room. Curtis claimed that when he returned to the bedroom, Cassidy had gotten up and shut himself in the bathroom. According to Curtis, he beat on the bathroom door. However, Cassidy was leaning against the door, and it would not open. Curtis insisted that he could still hear Cassidy breathing at that point. Curtis testified that he left the bedroom and returned about five minutes later, at which point he was able to open the door and found Cassidy dead and covered in blood.

¶6. The next day, Curtis cleaned up some of the blood in the house, put Cassidy's body on a tarp, and loaded the body into the back of Cassidy's SUV. He also cut Cassidy's clothes off him. Curtis then drove to an uninhabited area near the Mississippi-Alabama state line and dumped Cassidy's body in the woods at the end of a dead-end road.

¶7. While Curtis was disposing of Cassidy's body, the Harrison County Sheriff's Office received a call reporting a welfare concern and possible injury or homicide at Cassidy's house. Deputies responded, eventually entered the home, and found a large amount of blood in Cassidy's bedroom and bathroom and Cassidy's deceased dog lying in a pool of its own blood and vomit. They also found blood spattered on the dresser in the bedroom, blankets covered in blood, and a bloody pool cue and bloody revolver. Subsequent DNA analysis indicated that the blood on the pool cue was Cassidy's.

¶8. While investigators were still at the crime scene, Curtis returned to the house in

3

Cassidy's SUV. The investigators asked Curtis if he knew why they were there. Curtis answered, "All I want to know is how y'all found out so fast." Curtis was advised of his *Miranda* rights and questioned about Cassidy's whereabouts. Curtis admitted that he had killed Cassidy and "dumped him like a dog in the f'ing woods." Curtis later showed officers where he had taken Cassidy's body.

¶9. The medical examiner testified that Cassidy had suffered numerous blunt force injuries to his face and the back of his head, back, left arm, and neck and had also been strangled. The cause of death was determined to be a combination of beating and strangulation. There were three blunt injuries to Cassidy's face. There were two circular wounds to Cassidy's back, which initially appeared to be gunshot wounds but were later determined to be "puncture wounds," i.e., "also blunt injuries." There was also deep bruising on Cassidy's neck, which was consistent with strangulation.

¶10. At trial, the jury was instructed on first-degree (deliberate-design) murder, self-defense, and imperfect self-defense (manslaughter). The trial court declined to instruct the jury on second-degree (depraved-heart) murder or heat-of-passion manslaughter. The jury found Curtis guilty of first-degree murder and unlawful possession of a firearm by a felon. The trial court sentenced Curtis to serve life imprisonment for murder and a concurrent term of ten years on the firearm charge.

**ANALYSIS**

**I.      The trial court did not err in refusing to instruct jury on depraved-heart murder and heat-of-passion manslaughter.**

¶11. Curtis argues that the trial court erred by not instructing the jury on the lesser-included

offenses of second-degree (depraved-heart) murder, Miss. Code Ann. § 97-3-19(1)(b) (Supp. 2017), and heat-of-passion manslaughter, Miss. Code Ann. § 97-3-35 (Rev. 2014). We review de novo the refusal of lesser-included-offense instructions. *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007). A defendant has a right to a lesser-included-offense instruction if there is some evidence from which a reasonable juror could find him *both* not guilty of the indicted offense *and* guilty of the lesser-included offense. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). However, "the jury should not be presented with a lesser-included-offense instruction unless the record provides an evidentiary basis for the instruction." *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11) (Miss. 2014) (quotation marks omitted). Therefore, "lesser-included-offense instructions should not be granted on mere speculation." *Id.*

### A. Depraved-Heart Murder

¶12. Curtis's theory of defense was that he killed Cassidy in self-defense after Cassidy threatened him with a gun. Curtis maintained that the homicide was justifiable because he acted in true self-defense or, in the alternative, that he was guilty only of imperfect self-defense manslaughter. Imperfect self-defense is not a defense to the crime but only a circumstance that may downgrade an intentional killing from murder to manslaughter. *Brown v. State*, 222 So. 3d 302, 307 (¶21) (Miss. 2017). "[U]nder the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Id.* (quoting *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015)).

5

Consistent with Curtis's theory of defense, the trial court gave jury instructions on both self-defense and imperfect self-defense. As stated above, Curtis also requested an instruction on second-degree murder, which the trial court refused.

¶13. In this case, the indicted offense of first-degree (deliberate-design) murder is a killing done without authority of law and with the "deliberate design to effect the death of the person killed." Miss. Code Ann. § 97-3-19(1)(a).[1] In contrast, second-degree (depraved-heart) murder is a killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual." *Id.* § 97-3-19(1)(b).[2] Every deliberate-design murder is also a depraved-heart murder "because, as a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life." *Hawkins v. State*, 101 So. 3d 638, 642 (¶13) (Miss. 2012) (quotation marks omitted). However, "the inverse is not true," *i.e.*, not every depraved-heart murder is committed with the deliberate design to kill. *Id.*

¶14. On the facts of this case, the trial court did not err by refusing Curtis's proffered

---

[1] "Deliberate design may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Bowser v. State*, 182 So. 3d 425, 430 (¶12) (Miss. 2015) (quotation marks omitted).

[2] The Legislature created the distinct crimes of first-degree murder and second-degree murder in 2013. *See* 2013 Miss. Laws ch. 555, § 1 (S.B. 2377). Prior to 2013, deliberate-design murder and depraved-heart murder carried the same punishment (life imprisonment) and were simply two variants of the crime of "murder." Thus, prior to 2013, there rarely was an incentive for a defendant to request a depraved-heart murder instruction, and as a result there is little caselaw directly addressing a defendant's right to such an instruction.

second-degree murder instruction. Although the jury ultimately rejected it, Curtis's own testimony supported instructions on self-defense and imperfect self-defense. At Curtis's request, the trial court gave those instructions. In addition, Cassidy's extensive injuries and the crime scene evidence reflect a savage and thorough beating/strangulation that clearly supported instructions on the indicted offense of first-degree murder. However, there is no evidence in the record to suggest that Curtis committed this brutal murder—inflicting numerous injuries on Cassidy's face, head, neck, and arm—with the sort of "*recklessness*" that characterizes second-degree (depraved-heart) murder. *Id.* at 643 (¶17) (emphasis added). Such a conclusion would require speculation unsupported by any evidence presented by the State or by the defense. As stated above, "lesser-included-offense instructions should not be granted on mere speculation." *Franklin*, 136 So. 3d at 1026 (¶11) (quotation marks omitted). Accordingly, the trial court did not err by denying the requested instruction. *See Batiste v. State*, 121 So. 3d 808, 846 (¶¶77-78) (Miss. 2013) (holding that the trial court did not err by refusing a depraved-heart murder instruction where the "overwhelming evidence" showed that the defendant "acted with premeditation").

¶15. On appeal, Curtis relies on *Windham v. State*, 602 So. 2d 798, 799, 802 (Miss. 1992), in which the Supreme Court held that there was sufficient evidence to support a depraved-heart murder conviction when the defendant struck the victim with a hammer during a brief argument over a debt but claimed that he never intended to hurt anyone. Curtis also cites *Hunter v. State*, 187 So. 3d 674, 676-77 (¶¶1-11) (Miss. Ct. App. 2016), in which this Court held that there was sufficient evidence to support a second-degree murder conviction for a

killing during a domestic dispute when the defendant told his daughter to call 911 after realizing that the victim, his girlfriend, was unconscious. Curtis asserts that if the beatings in *Windham* and *Hunter* qualified as depraved-heart murders, then it necessarily follows that the beating in this case also warranted an instruction on that offense.

¶16.    We disagree. In both *Windham* and *Hunter*, the evidence permitted an inference of a brief assault or reckless act that produced death without deliberate design. In this case, in contrast, the evidence established that Curtis beat Cassidy repeatedly with both a pool cue and a revolver and also strangled him, with the cause of death identified as a combination of blunt force trauma and strangulation. The jury was instructed on Curtis's claims of perfect and imperfect self-defense. Aside from those claims, which the jury rejected, there was no reasonable inference that the killing resulted from mere "recklessness." *Hawkins*, 101 So. 3d at 643 (¶17). Rather, the killing was the end result of a prolonged, brutal, and deliberate assault by Curtis. No reasonable juror could have found that the killing was neither first-degree murder nor an act of (perfect or imperfect) self-defense but only a reckless act. Accordingly, the trial court appropriately refused the requested instruction.[3]

### B.    Heat-of-Passion Manslaughter

¶17.    Curtis also argues that the trial court erred by refusing to instruct the jury on heat-of-

---

[3] Curtis correctly argues that second-degree (depraved-heart) murder "encompasses a reckless and eminently dangerous act directed toward a single individual." *Windham*, 602 So. 2d at 802. The trial court was incorrect to the extent that it suggested otherwise during the charge conference. However, the trial court also properly refused the instruction on the ground that the evidence did not support it.

passion manslaughter.[4] Curtis argues that the instruction was warranted based on his own testimony that Cassidy had threatened him previously, argued with him about selling the house, and demanded oral sex. However, Curtis testified at trial that he was "not arguing" with Cassidy prior to the murder but only trying to reason with him. In addition, Curtis testified that Cassidy's alleged demand for oral sex "had nothing to do with why [Curtis] killed him."

¶18.    A "heat of passion" is defined as

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from a grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Jones v. State*, 39 So. 3d 860, 866 (¶36) (Miss. 2010) (quoting *Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986)). To establish a "heat of passion," there must be such provocation and "circumstances as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment." *Id.* at 867 (¶36) (quoting *Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987)).

¶19.    We concur with the trial court that the evidence presented at trial did not support an instruction on heat-of-passion manslaughter. Curtis himself testified that he was only trying

---

[4] Curtis submitted a proposed jury instruction that defined "heat of passion," but he did not offer a corresponding elements instruction or a verdict form with the option of heat-of-passion manslaughter. However, the State concedes that Curtis did enough to preserve the issue. *See Miss. Valley Silica Co. v. Eastman*, 92 So. 3d 666, 671 (¶21) (Miss. 2012) ("When a party submits a jury instruction on an important issue not covered in the other instructions, it is the trial court's ultimate duty to instruct the jury properly.").

to reason with Cassidy and that Cassidy's alleged sexual advances "had nothing to do with why [Curtis] killed him," and there was no other evidence that Curtis acted in a "heat of passion." Therefore, the trial court did not err by refusing to instruct the jury on heat-of-passion manslaughter.

## II. Curtis fails to show that he received ineffective assistance of counsel.

¶20. Curtis argues that he received ineffective assistance of counsel at trial because his attorney (1) failed to request adequate jury instructions on depraved-heart murder and heat-of-passion manslaughter and (2) failed to object to a jury instruction on the gun possession charge that disclosed that his prior felony conviction was for burglary.

¶21. "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (brackets and quotation marks omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* To prevail on a claim of ineffective assistance, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive

10

the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶22. With respect to trial counsel's alleged failure to propose adequate instructions on depraved-heart murder and heat-of-passion manslaughter, Curtis's claim fails for the reasons already discussed above in Part I. Curtis raises this issue primarily as a fall-back argument in the event we conclude that his trial counsel failed to preserve his requests for lesser-included-offense instructions. We conclude above that Curtis's trial counsel preserved those issues, *see supra* note 4, but the trial court did not err by refusing to instruct the jury on these issues. It necessarily follows that Curtis was not prejudiced by any deficiencies in counsel's proposed instruction.

¶23. With regard to the disclosure of Curtis's prior conviction for burglary, Curtis and the State stipulated that Curtis had previously been convicted of a felony, and the stipulation was read to the jury and admitted into evidence during the State's case-in-chief.[5] The stipulation did not disclose the specific felony of which Curtis had been convicted, nor was that fact mentioned at any other point during the trial. However, the jury instruction on the elements of unlawful possession of a firearm by a felon disclosed that Curtis's prior conviction was

---

[5] *Williams v. State*, 991 So. 2d 593, 605-06 (¶40) (Miss. 2008) (holding that a trial court must accept a defendant's offer to stipulate to the fact of a prior felony conviction in cases in which "evidence of a prior conviction is a necessary element of the crime for which the defendant is on trial (i.e., possession of firearm by a convicted felon), but evidence of the *specific nature of the crime* for which the defendant was previously convicted . . . is not an essential element of the crime for which the defendant is on trial").

for burglary. The disclosure of the nature of the crime apparently was inadvertent, as there was no mention of it or objection to it during trial. Curtis now argues that his trial counsel's failure to object to the instruction amounts to ineffective assistance of counsel and reversible error. We disagree.

¶24. This Court has stated that in some cases it may be reasonable trial strategy to disclose the specifics of a prior felony conviction because a generic stipulation "could give 'the jury the impression that the defense had some reason to hide facts of the prior cases from them.'" *Collins v. State*, 221 So. 3d 366, 372-73 (¶21) (Miss. Ct. App. 2016) (brackets omitted) (quoting *Williams v. State*, 819 So. 2d 532, 538 (¶18) (Miss. Ct. App. 2002)), *cert. denied*, 220 So. 3d 975 (Miss. 2017). In this case, however, the disclosure appears to have been unintentional—an oversight—not strategic. Nonetheless, the oversight does not amount to constitutionally ineffective assistance of counsel.

¶25. "There is no constitutional right . . . to errorless counsel." *Branch v. State*, 882 So. 2d 36, 59 (¶26) (Miss. 2004). The defendant has a right to "competent counsel," *not* "an attorney who makes no mistakes at trial." *Id.* To satisfy the first prong of *Strickland*, the defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Similarly, under the second prong, the defendant must "show[] that counsel's errors were so serious as to deprive [him] of a fair trial." *Id.* Trial counsel's mistake in this case does not satisfy either prong of *Strickland*. Prior to the disclosure in the jury instruction, the jury already knew that Curtis had been convicted of *some* felony. As far as the jury knew,

that felony could have been *more* serious than a burglary. We cannot say that trial counsel made an error so serious that he ceased to function as counsel—or deprived Curtis of a fair trial—when he failed to object to this instruction and thereby allowed the jury to learn that Curtis had previously committed a burglary. Accordingly, Curtis's claim that he received ineffective assistance of counsel at trial is without merit.

## CONCLUSION

¶26. Curtis was not entitled to jury instructions on second-degree (depraved-heart) murder or heat-of-passion manslaughter. Nor has Curtis shown that he received ineffective assistance of counsel at trial.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**