## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01353-COA

TERRANCE BROWN                                                              APPELLANT

v.

STATE OF MISSISSIPPI                                                        APPELLEE

DATE OF JUDGMENT:                07/23/2019
TRIAL JUDGE:                     HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:       COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               BRENDA FAY MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     REVERSED AND RENDERED -10/06/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     A security guard was convicted of culpable-negligence manslaughter and sentenced to ten years in the custody of the Mississippi Department of Corrections, with five years suspended and five years to serve, followed by five years of supervised probation. He now appeals, challenging the sufficiency and weight of the evidence.

### FACTS

¶2.     In the early hours of Christmas Eve, Terrance Brown was working a shift as a security guard at Antonio's Bar & Grill. Twenty-five-year-old Tevin Quiney, standing five feet eight and weighing 367 pounds, came to the club to party with friends. During the night, a fight

broke out between two other men. Although just a patron, Quiney took it upon himself to remove one of the men involved from the bar.

¶3. Seeing this, Brown responded by attempting to remove Quiney from the bar. While in the process, Quiney fell unconscious; the security guard attempted CPR, to little help. Quiney was transported by ambulance to a nearby hospital, where he passed away. Brown was later charged and indicted with culpable-negligence manslaughter for Quiney's death.

¶4. At trial, the State offered eyewitness testimony from Terrance Magsby, a friend of Quiney's who was present that evening. Magsby saw Quiney try to get the man involved in the altercation "under control." He stated that Quiney had the man's hands behind his back while "trying to take him out the door." Magsby testified that Brown then wrapped his arms around Quiney's neck and "choke[d] him to the ground[.]"

¶5. Rebbie Gordon, a lifelong friend of Quiney, also testified on behalf of the State. Gordon stated that she had seen Quiney at the bar but had not witnessed him acting aggressively. At one point there was "movement in the crowd," which prompted Gordon to step away. When Gordon returned, she saw Brown performing CPR on an unconscious Quiney. Gordon, a trained certified nursing assistant, who was certified in CPR, took over for Brown, but she was unable to revive Quiney.

¶6. Lionel Johnson, another patron at the bar, testified on behalf of the defense. Johnson saw Quiney on the dance floor acting "kind of hostile." When Brown tried to remove him from the floor, Quiney "wanted to tussle or whatever." "[Quiney] looked like he wanted to hit [Brown] or, you know, swing or something, so Terrance Brown brought him to the floor

2

and he was trying to handcuff him." At that point Quiney went unconscious and Brown began to perform CPR. According to Johnson, "Terrance did try to resuscitate [Quiney] the whole time." Johnson stated he was within immediate proximity of the event, "close enough to touch," and he was "positive" he did not see Brown choke Quiney.

¶7. Dr. Mark LeVaughn, the Chief Medical Examiner for the Mississippi State Medical Examiner's Office, provided testimony regarding the autopsy results. Quiney's cause of death was determined to be complications of hypertensive cardiovascular disease associated with a physical altercation. The manner of death was found to be homicide.

¶8. The autopsy also showed that Quiney had a number of small bruises and lacerations on his face in addition to petechia (redness in the eye). Dr. LeVaughn testified that the only injuries found near the neck were a "scrape to the chin" and "injuries to . . . the lip." No internal injuries were found. "He did not present any crushing of the larynx," the doctor testified, and no sign of injury to "any structures of the neck[.]"

¶9. On cross-examination, Dr. LeVaughn testified that it was possible the types of injuries found on Quiney could have been caused by medical procedures such as intubation—the tube that was in Quiney's mouth. He also testified that the redness in the eye could have been caused by choking or other possibilities such as "any sustained pressure on the neck; any sustained pressure on the chest;" or a "disease of a clotting or bleeding[.]" Dr. LeVaughn stated that "[i]t's a possibility to see them from having received CPR."

¶10. Following the close of the State's case, Brown moved for a directed verdict, which was denied. After the close of all evidence, Brown renewed his motion and requested a

3

peremptory instruction directing the jury to find him not guilty, which the trial court also denied. The jury convicted Brown of culpable-negligence manslaughter under Mississippi Code Annotated section 97-3-47 (Rev. 2014). He was sentenced to ten years in the custody of the Mississippi Department of Corrections, with five years suspended and five years to serve, followed by five years of supervised probation.

## DISCUSSION

¶11. Brown's sole argument on appeal is that the evidence was insufficient to sustain the jury verdict or, in the alternative, that the verdict was contrary to the weight of the evidence.

¶12. "The standard of review for a denial of a directed verdict, peremptory instruction, and a [motion for judgment notwithstanding the verdict] are identical." *Kimble v. State*, 270 So. 3d 940, 946 (¶25) (Miss. Ct. App. 2018). "A motion for a directed verdict and request for a peremptory instruction challenge the legal sufficiency of the evidence." *Id.*; *see Williams v. State*, 285 So. 3d 156, 161 (¶21) (Miss. 2019) ("And a trial judge must deny a peremptory instruction when the State's evidence, taken as true, together with all sound or reasonable inferences supports a guilty verdict"). "On appeal, we review the trial court's finding regarding the sufficiency of the evidence at the time the motion for a directed verdict or request for a peremptory instruction is denied." *Kimble*, 270 So. 3d at 946 (¶25).

¶13. "In reviewing the sufficiency of the evidence on appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hawkins v. State*, 101 So. 3d 638, 642 (¶11) (Miss. 2012). "We will not disturb the

4

conviction if, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." *Id*. (internal quotation mark omitted).

¶14. The issue in this case is not whether we would have found Brown guilty based on the evidence at trial. Rather, his conviction must be affirmed if there was enough evidence for "any rational trier of fact" to have returned a guilty verdict of culpable negligence. To determine if there was, we look to the elements of the crime of which he was convicted.

¶15. "Culpable-negligence manslaughter is the 'killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law.'" *O'Kelly v. State*, 267 So. 3d 282, 291 (¶31) (Miss. Ct. App. 2018) (quoting Miss. Code Ann. § 97-3-47 (Rev. 2014)), *cert. denied*, 267 So. 3d 279 (Miss. 2019). "Our Supreme Court has defined 'culpable negligence' as 'negligence of a degree so gross as to be tantamount to a wanton disregard, or utter indifference to, the safety of human life.'" *Id*. (quoting *Hawkins*, 101 So. 3d at 643 (¶17)). "[T]he rule [is] that in order to give the term 'culpable negligence' in the statute its proper setting it should be construed to mean negligence of a higher degree than that which in civil cases is held to be gross negligence." *Moore v. State*, 238 Miss. 103, 109-10, 117 So. 2d 469, 471 (1960). In other words, it "must be negligence so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt." *Id*.

¶16. "Even in civil cases, a defendant is not liable for every consequence which may be remotely traced back to him but only for those which he should reasonably have foreseen as

5

something likely to happen[—]not for those which might possibly happen but for those which under the circumstances so nearly approached a probability as to be characterized as likely to happen." *Goudy v. State*, 203 Miss. 366, 369, 35 So. 2d 308, 309 (1948).

¶17.    Our Supreme Court has affirmed homicide convictions where, like this one, there was evidence the cause of death was a combination of heart issues and stress. In one, a defendant was convicted of murder while engaged in a robbery after he had robbed and beaten the deceased in the head with a tire iron. *Jackson v. State*, 441 So. 2d 1382, 1383 (Miss. 1983). The pathologist determined that the cause of death "was cardiac arrest resulting from stress compatible with blows to [the victim's] head." *Id*. "The restroom where the attack was alleged to have taken place was splattered with blood on the floor and door panels, indicating an extensive struggle where several blows would have been inflicted on the victim, . . . [t]wo eyewitnesses saw [the defendant] and [the victim] struggling in the restroom[,]" and "[s]mall amounts of blood were on [the defendant's] face and left hand, presumably from his wrestling match with [the victim] in the restroom." *Id*. The Supreme Court found that this evidence was sufficient to sustain the defendant's conviction of murder while engaged in a robbery. *Id*.

¶18.    In another case, a man was accused of murdering his girlfriend. *Hawkins v. State*, 101 So. 3d 638 (Miss. 2012). The couple had gotten into a fight and the man "[w]ent into a blackout I guess. We were both drinking." *Id*. at 640 (¶3). The girlfriend "had sustained 'severe trauma' to her face, neck, and arms." *Id*. at (¶4). Additionally, her "right eye was swollen shut, and she had a bloody nose." *Id*. The cause of death was determined to be "the

6

product of an assault, blunt force trauma, producing cardiovascular death through arrhythmia." *Id.* at (¶6). The Supreme Court found that the evidence was sufficient to establish the elements of depraved heart murder. *Id.* at 643 (¶15).

¶19. Both of those cases are distinguishable. In both *Jackson* and *Hawkins*, there were multiple blows to the victims resulting in severe blunt-force trauma. Additionally, there were signs of extensive struggles in both cases. Further, in *Jackson*, the defendant used a deadly weapon—a tire iron—to bludgeon his victim in the head. *Jackson*, 441 So. 2d at 1383; *see Walls v. State*, 759 So. 2d 483, 487 (¶10) (Miss. Ct. App. 2000) (suggesting that a tire iron could be a "deadly weapon" for purposes of aggravated assault when used to inflict injury). In these cases, there was ample evidence of "negligence so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." *Moore*, 238 Miss. at 109-10, 117 So. 2d at 471.

¶20. In contrast, Brown's singular act of attempting to remove Quiney from the club does not meet the high burden of culpable negligence. While the act may have been negligent, there was no evidence of severe trauma or trauma in multiple locations that could constitute gross negligence. The only injuries were a few lacerations, which could have been the result of medical intervention, and petechia in the eyes, which could have been caused during resuscitation attempts. Nor was there evidence of an extensive struggle between the two men. Indeed, some witnesses completely missed seeing the event. In summary, these facts were insufficient to demonstrate "negligence so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." *Id.*

¶21. This is not the first such conclusion in a case of this type, as forty years ago our Supreme Court concluded that "[e]xperience has shown that under that statute (the culpable negligence statute) juries are overinclined to convict on proof of what is in fact no more than simple negligence, and as a result there have been more reversals in this class of cases than perhaps in any other that comes before us." *Phillips v. State*, 379 So. 2d 318, 320 (Miss. 1980).

¶22. We conclude the evidence at trial was insufficient to establish culpable-negligence manslaughter. Brown's singular act of attempting to remove Quiney from the bar was insufficient to demonstrate either "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." Accordingly, we reverse and render the conviction.

¶23. **REVERSED AND RENDERED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. CARLTON, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**