# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00505-COA

JASON CLAYTON                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:             04/15/2021
TRIAL JUDGE:                  HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:    LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       JOHN S. GRANT IV
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:            KASSIE ANN COLEMAN
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 02/14/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. On May 24, 2018, a Lauderdale County grand jury indicted Jason Clayton for two counts of "Murder/Manslaughter" pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2015) and section 97-3-25 (Rev. 2014). After a four-day jury trial, Clayton was found guilty of first-degree murder as set out in both Count I and Count II of the indictment. Clayton was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for each count, with the sentences ordered to run consecutively. Clayton was given credit for 1,589 days of jail time served between December 9, 2016, and April 15, 2021. Clayton seeks to have his conviction reversed and a judgment of acquittal rendered based on insufficient evidence or, in the alternative,

reversed and the case remanded for a new trial so that the jury may be instructed on lesser-included offenses.

## FACTS AND PROCEDURAL HISTORY

¶2.     On December 8, 2016, Clayton, Schwanda Rogers,[1] Melissa Taylor, and Jaelin Price[2] were riding around Lauderdale County, Mississippi in Rogers' white Buick Rendevous. While Clayton did not testify at trial or give a written statement, he admitted to Investigator Charles Pickett that he was in Rogers' car on December 8, 2016. Rogers testified that Clayton sent her a text message on the night before (December 7, 2016) asking if she would "take him to Collinsville to buy some loud."[3] According to Rogers, she had purchased marijuana from Clayton in the past, and because she wanted to buy from him again, she agreed to pick up Price and Clayton in Azalea Park on the morning of December 8 and take him to buy marijuana. Rogers further testified that after picking up Clayton and Price, she picked up Taylor. Taylor had a 9mm pistol with her when she got in Rogers' vehicle. Taylor testified that she took the pistol everywhere she went for protection because of a previous incident where she "was jumped" three or four months before. According to Taylor, Clayton asked her if her gun was real and if he could "see it." Taylor testified that she handed her gun to Clayton. Both Price and Taylor testified that while they were riding, Clayton started shooting the gun out the car window.

---

[1] Rogers is also referred to as "Tiny" in some portions of the record.

[2] Price and Clayton are cousins.

[3] Rogers testified that "loud" is a slang term for marijuana.

2

¶3. After several stops, the four traveled to a house located at 8627 Highway 19 North in Collinsville, Mississippi, to purchase marijuana. Rogers, Price, and Taylor all testified that when they arrived at the house on Highway 19, Clayton got out of the car and went inside the house while the other three remained in Rogers' SUV. According to Price, he later got out of the car to go find Clayton "because it was taking too long," and he was "ready to go." When Price went into the house he said, "I [saw] Jason and the man.[4] I spoke to him. I said, 'what's up?' And my cousin told me to get out." Price further testified:

> I was going back to the car, and as I was going back to the car, I got outside, and then I started hearing shots fired. So as I heard shots fired, I ran down the driveway because I didn't know who shot who. And as I'm running down the driveway, I'm scared. I see another guy coming, so I'm thinking, like it is something fishy going on. So as I ran to the car, I get in the car. And I turned. . . . I hid in the car. I turned around and that's when I [saw] my cousin come out the door, and he was meeting the other guy between us. . . . [H]e hesitated when he saw him because he probably thought it was me. . . . He walked out and he realized it wasn't me, and once he realized it wasn't me, he shot him.[5] And when he shot him, I told the girls "leave him," but they didn't leave him.

Taylor's version of what took place at the home corroborated Price's account. According to Taylor,

> [w]hen Jason r[an] out of the house, there was some young dude with some dreads was walking into the house. When he was walking into the house, he bumped into Jason. When he bumped into Jason, Jason turned around and . . . killed him. . . . [T]he young dude wasn't trying to fight him or nothing. He just . . . Jason turned around and just shot him, and Jason got in the car with us. I told Tiny, "why did you let Jason back in the car?" She didn't say nothing. She just . . . I guess about 10 or 15 minutes go by. Everybody was quiet. I was like, "why did you do that," like "why you kill them people." He ain't said nothing to me. He got a smile on his face, like a smirk. So five minutes

---

[4] The first man was later identified as Delbrico Rigsby.

[5] The second man was later identified as Lonnie Lyles.

later, I asked for my gun back, and he was talking about, "no. I need the gun. I need to go kill some more people." So that's when I realized like he really didn't care about killing people. That's when I asked for my gun back.

According to Rogers, after they left the residence on Highway 19, she dropped off Price and Clayton on 9th Street. She testified that Taylor got in the front seat of the vehicle, and they proceeded to Rogers' home. Price testified that after Rogers dropped him and Clayton off,

[w]e just sat there, and then [Clayton] used my phone to call someone. And the girl he called, she pulled up and she rented him a car. And when she rented him a car, he went on to this house and grabbed stuff and dropped me off at home. When he dropped me off at home, he told me I didn't have nothing to worry about because I didn't have nothing to do with it, and that was it.

¶4.    On that same day, Mrs. Leslie Clayton[6] was also driving in the area near the home at 8627 Highway 19 North in Collinsville, Mississippi. Mrs. Clayton testified that she was on her way to a job interview and was on the phone with her sister as she approached Wilsondale Road. According to Mrs. Clayton,"[she saw] two guys running down the driveway with something in their hand." She further testified:

As I get to the Tedder Door, I see the SUV that was in the driveway fly past me. So I speed up. It was doing like 100 miles an hour, so I sped up, caught [up] with it, got the tag number. And I said, "If we go on the Community Watch tonight and find out they were stealing Christmas gifts, we are gonna turn them in." And that was it.

Mrs. Clayton's sister, Tina Cole, wrote down the tag number as Mrs. Clayton called it out over the phone. Cole's co-worker Cathy Theall called in the tag number to Paul Early, who was employed with the Lauderdale County Sheriff's Department at the time. The tip regarding Rogers' car tag led to the arrests of Rogers, Taylor, Price, and Clayton. Clayton

_____

[6] Leslie Clayton is not related to Appellant Jason Clayton.

4

was apprehended at a hotel in Rankin County, Mississippi, by the United States Marshal Service's task force on December 9, 2016. After a four-day trial, Clayton was convicted of two counts of first-degree murder on April 15, 2021. Aggrieved by the jury's verdict, Clayton appealed.

## ANALYSIS

¶5. On appeal, Clayton argues that the circuit court erred by refusing his lesser-included-offense jury instructions for second-degree murder and culpable-negligence manslaughter. Clayton claims that by refusing to instruct the jury on manslaughter, the trial court "constructively amended the indictment, resulting in reversible error per se." Clayton argues that the "evidence supported his lesser-included-offense instructions." Secondly, Clayton argues that the evidence presented at trial was insufficient on the "deliberate design" element for both counts of first-degree murder.

> **I.    Did the circuit court err by refusing Clayton's lesser-included-offenses instructions?**

¶6. In *Curtis v. State*, 298 So. 3d 446, 450-51 (¶11) (Miss. Ct. App. 2020), this Court described our standard of review as follows:

> We review de novo the refusal of lesser-included-offense instructions. *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007). A defendant has a right to a lesser-included-offense instruction if there is some evidence from which a reasonable juror could find him both not guilty of the indicted offense and guilty of the lesser-included offense. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). However, "the jury should not be presented with a lesser-included-offense instruction unless the record provides an evidentiary basis for the instruction." *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11) (Miss. 2014) (quotation marks omitted). Therefore, "lesser-included-offense instructions should not be granted on mere speculation." *Id*.

**A. Did the trial court's failure to instruct the jury on manslaughter constructively amend the indictment, resulting in reversible error per se?**

¶7. Count I and Count II of the indictment charged Clayton with "MURDER/MANSLAUGHTER." More specifically, Count I of his indictment stated in part:

> **JASON CLAYTON**
>
> in said County and State, on or about the 8th day of December, A.D., 2016 did willfully, unlawfully, and feloniously, with deliberate design to effect the death of Lonnie Lyles did kill and murder Lonnie Lyles, a human being, without authority of law and not in necessary self defense, by shooting Lonnie Lyles in the head with a 9mm handgun,
>
> and, if not this greater crime, then the lesser crime of Manslaughter for having killed Lonnie Lyles by shooting him without any design to effect his death.

Count II stated in part:

> **JASON CLAYTON**
>
> as part of a common plan or scheme or as part of the same transaction or occurrence
>
> in said County and State, on or about the 8th day of December, A.D., 2016, did wilfully, unlawfully, and feloniously, with deliberate design to effect the death of Delbrico Rigsby did kill and murder Delbrico Rigsby, a human being, without authority of law and not in necessary self defense, by shooting Delbrico Rigsy with a 9mm handgun,
>
> and, if not this greater crime, then the lesser crime of Manslaughter for having killed Delbrico Rigsby by shooting him without any design to effect his death.

Clayton argued at trial, as he does on appeal, that he was entitled to a culpable-negligence manslaughter instruction simply because manslaughter was charged in both counts of the indictment. While Clayton did not submit any authority to the trial court to support his

contention, on appeal he cites several cases. From *Decker v. State*, 66 So. 3d 654, 657 (¶14) (Miss. 2011), he argues that where the instructions given deviate from the conduct considered by the grand jury, reversal is required. He cites *Williams v. State*, 445 So. 2d 798, 806 (Miss. 1984), for the proposition that there can be "no material variance between the indictment and the [jury] instruction[s]." From *Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016), he argues, "A constructive amendment of an indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment." He cites no cases, however, that match the facts in the present case.

¶8. In the present case, the jury was given instructions for first degree murder, which was unquestionably charged in both counts of his indictment. He does not claim error or that he was prejudiced in any way by the instructions that were given for the first degree murder of Lyles and Rigsby. Those instructions clearly cover the charges returned by the grand jury, and, therefore, Clayton was not convicted on a ground not charged in the indictment.

¶9. Clayton is claiming prejudice for the *refusal* of a jury instruction for a lesser offense *included* in both Count I and Count II of his indictment. The Mississippi Supreme Court repeatedly has held that an indictment for murder includes the lesser-included charge of manslaughter. *State v. Shaw*, 880 So. 2d 296, 304 (¶26) (Miss. 2004) ("This Court has repeatedly applied the general rule and upheld convictions of manslaughter obtained under an indictment for murder."). Thus, the inclusion of the language charging manslaughter as a lesser offense was unnecessary and was surplusage. We find that the trial court's refusal

7

of the requested culpable-negligence manslaughter instruction does not amount to a constructive amendment of the indictment and does not automatically require reversal of Clayton's convictions.

### B. Did the evidence support Clayton's lesser-included-offense instructions?

¶10. Clayton offered two lesser-included-offense jury instructions at trial: D-10, an instruction for second-degree murder; and D-11, an instruction for culpable-negligence manslaughter. On appeal, Clayton claims that the evidence was sufficient to warrant an instruction on the lesser-included offenses.

### i. D-10: Second-Degree Murder

¶11. The differences between first-degree murder and second-degree murder were described in *Curtis*, 298 So. 3d at 451 (¶13), as follows:

> In this case, the indicted offense of first-degree (deliberate-design) murder is a killing done without authority of law and with the "deliberate design to effect the death of the person killed." Miss. Code Ann. § 97-3-19(1)(a) (footnote omitted). In contrast, second-degree (depraved-heart) murder is a killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual." *Id*. § 97-3-19(1)(b) (footnote omitted). Every deliberate-design murder is also a depraved-heart murder "because, as a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life." *Hawkins v. State*, 101 So. 3d 638, 642 (¶13) (Miss. 2012) (quotation marks omitted). However, "the inverse is not true," i.e., not every depraved-heart murder is committed with the deliberate design to kill. *Id*.

Further, in *Woods v. State*, 242 So. 3d 47, 57 (¶39) (Miss. 2018), the supreme court described the defendant's burden to support the giving of a lesser-included-offense instruction:

"A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Thomas v. State*, 48 So. 3d 460, 469 (¶23) (Miss. 2010). "To be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 [(¶13)] (Miss. 2013).

¶12. Thus, it was Clayton's responsibility at trial to point the trial judge to some record evidence from which the jury could have found him not guilty of first-degree murder but guilty of second-degree murder. However, after the State objected and argued that there was no factual basis to support a second-degree murder instruction, Clayton's trial counsel offered no argument whatsoever in support of giving the second-degree murder instruction. Therefore, the trial court did not err by refusing instruction D-10.

### ii. D-11: Culpable-Negligence Manslaughter

¶13. Mississippi Code Annotated section 97-3-47(Rev. 2020) defines manslaughter as "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." In *Conley v. State*, 790 So. 2d 773, 793 (¶70) (Miss. 2001), the Mississippi Supreme Court held:

> [T]he term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.

"Culpable negligence is defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an

unreasonable risk thereof." *Evans v. State*, 562 So. 2d 91, 94 (Miss. 1990) (internal quotation marks omitted). At trial, Clayton again, as required by *Wood*, failed to point the trial judge to any evidence that would tend to show that he could have been found not guilty of first-degree murder but guilty of culpable- negligence manslaughter. The only argument Clayton's trial counsel made in support of D-11, the culpable-negligence manslaughter instruction, was that manslaughter was charged in both counts of the indictment. As discussed above, there must be an evidentiary basis to support the giving of a lesser-included-offense instruction.

¶14.   Neither the State nor Clayton presented any evidence of negligence in the shootings of Rigsby and Lyles. There were no witnesses to the actual shooting of Rigsby, other than Clayton, and he did not testify at trial. The evidence is clear that Clayton obtained a gun from Taylor and carried the gun into Rigsby's house to buy drugs. Price testified that he went into the house to get Clayton and saw Clayton and Rigsby together. As Price was leaving the house as ordered by Clayton, he heard several shots being fired inside the house. The evidence further showed that Rigsby was shot multiple times, including shots to his head, chest, abdomen, and leg. There is no evidence in the record that Rigsby was shot, multiple times, negligently.

¶15.   Unlike in Rigsby's case, there were multiple witnesses to the shot that killed Lyles. Both Price and Taylor testified that they saw Clayton shoot Lyles in the head at point-blank range. Price even testified that Clayton briefly hesitated before he shot Lyles. There is no evidence in the record that Lyles was armed at the time that he was shot or that he provoked

Clayton in any way. There is no evidence of negligence in the shootings of Rigsby and Lyles. Upon our de novo review, we find no evidentiary basis that would warrant a lesser-included-offense jury instruction for either second-degree murder or culpable-negligence manslaughter.

**II.    Was the evidence insufficient on the "deliberate design" element for either or both counts of murder?**

¶16.    In *Collins v. State*, 221 So. 3d 366, 370 (¶13) (Miss. Ct. App. 2016), this Court held that in reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Clayton argues that the State failed to meet their burden in proving the element of deliberate design. Mississippi Code Annotated section 97-3-19(1)(a) defines first-degree murder as the killing of a human being "[w]hen done with deliberate design to effect the death of the person killed, or of any human being . . . ."

> In Mississippi, "deliberate design" and "malice aforethought" are considered synonymous terms, and both "connote an intent to kill." . . . "This intent may be 'formed quickly,' even 'moments before the act' and may be inferred from the use of a deadly weapon." . . . "[I]ntent may be proven . . . by showing the acts of the person involved at the time, and . . . the circumstances surrounding the incident."

*Collins*, 221 So. 3d at 371 (¶14) (citations omitted).

¶17.    It can be inferred by Clayton's use of a deadly weapon and the circumstances surrounding the incident as described above that he acted with deliberate design (i.e., intent) when he shot both Rigsby and Lyles. On December 8, 2016, Clayton entered the residence

at 8627 Highway 19 North in Collinsville, Mississippi, with a deadly weapon. Price testified that when he went into the house, he saw only Clayton and Rigsby in the back room. As Price exited the house, he heard multiple gunshots from inside the home. Rigsby was shot multiple times, as described above. Price's testimony was corroborated by both Taylor and Rogers. Further, both Price and Taylor witnessed Clayton shoot Lyles in the head. Price stated that Clayton paused a moment before shooting Lyles as he was leaving the residence. The evidence presented at trial also showed that shell casings recovered by investigators at the scene matched the gun that Clayton took into the home. Finally, Taylor testified that as they were driving away from the scene, Clayton had a smirk on his face and when she asked for her gun back, he said "no. I need the gun. I need to go kill some more people."

**CONCLUSION**

¶18.    After reviewing the record, we find no error by the trial court in refusing Clayton's lesser-included-offense jury instructions for both second-degree murder and culpable-negligence manslaughter. We further find that the evidence presented at trial was sufficient to support Clayton's convictions for first-degree murder. Therefore, Clayton's convictions based on Count I and Count II of the indictment for first-degree murder and his sentences are affirmed.

¶19.    **AFFIRMED.**

　　**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

12